UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kroll Ontrack, Inc,                                                          Civil No. 05-928 (JRT/FLN)

    Plaintiff,

    v.                                                                          **REPORT AND**
                                                                                    **RECOMMENDATION**
Sean Foley,

    Defendant.

_____

George Wood, for Plaintiff.
Daniel Oberdorfer, for Defendants.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on October 14, 2004, on Plaintiff's Motion to Dismiss or in the Alternative to Transfer [#3]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons that follow, this Court recommends Plaintiff's Motion to Dismiss or in the Alternative to Transfer be granted in part and denied in part. To the extent that the Motion seeks to dismiss the present case, the Motion is denied. To the extent that the Motion seeks to transfer the present case, the Motion is granted.

**I.   BACKGROUND**

Plaintiff Kroll Ontrack, Inc. (hereinafter "Kroll") is an international company, with thirteen offices and five service labs around the world. (See Affidavit of Daniel Oberdorfer ("Oberdorfer Aff.") Ex. A.) Kroll provides litigation support to corporations and law firms. (Oberdorfer Aff. Ex. A.) Kroll is a Minnesota corporation, with its principal place of business in Eden Prairie, Minnesota. (Affidavit of Tony Cueva ("Cueva Aff.") ¶ 2.) Defendant Sean Foley (hereinafter "Foley") is a 31-

year-old non-practicing attorney who resides in Burke, Virginia. (See Affidavit of Sean Foley ("Foley Aff.") ¶ 1.) Foley has lived in Virginia since 1996. (Id.) Foley graduated from Catholic University, Columbus School of Law, in Washington D.C. in 1999. (Id. ¶ 2.)

On August 14, 2003, Foley interviewed with Kroll in Minnesota for the position of Legal Consultant. (Affidavit of George R. Wood ("Wood Aff.") Ex. A at 21-22.) On that same date Foley was offered a position with Kroll while he was in the State of Minnesota. (Id. at 20.) At the same time Mr. Foley was offered the position with Kroll, he was asked to sign a confidentiality agreement and a covenant not to compete ("Agreement") with Kroll as a condition of his employment. (Id. at 21-23.) This Agreement was drafted and executed by Kroll in Minnesota, received by Foley in Minnesota, signed by Foley in Virginia on August 15, 2003, and then faxed back to Kroll's offices in Minnesota, where it was executed on August 18, 2003. (Pl.'s Mem. in Opp. at 2-4.) The Agreement specifically requires the application of Minnesota law. (Pl.'s Compl. Ex. A. at 7.) This Agreement is the basis for the present suit filed by Kroll. The Agreement restricts Foley's efforts to compete with Kroll Ontrack for two years after the termination of his employment with Kroll. (Id. at 6-7.) The Agreement also restricts Foley from using or disclosing Kroll's confidential information or soliciting Kroll's employees. (Id.)

Once Foley accepted employment with Kroll, he went to work as a Legal Consultant out of Kroll's Reston, Virginia, office. (Foley Aff. ¶ 3.) In addition to working from the Reston, Virginia, office, Foley also frequently worked out of his home. (Id.) During his employment with Kroll, Foley first lived in Alexandria, Virginia, and then later moved to Burke, Virginia, where he currently resides. (Id.) As a Legal Consultant for Kroll, Foley's duties consisted of selling electronic discovery services to large law firms and corporations in the Virginia area and throughout the East

Coast. (Id. ¶ 4.) None of Foley's accounts were based in Minnesota. (Id.)

During most of Foley's employment, he reported directly to Tony Cueva, (hereinafter "Cueva") a Kroll supervisor who was based in Minnesota. (Cueva Aff. ¶1.) Foley reported to Cueva between September 2003 and December 2004. (Id.) Foley then reported to Jason Straight in New York between January 2005 and May 2005. (Wood Aff. Ex. A. at 73-74.) While employed with Kroll, Foley sent reports to Minnesota detailing his work responsibilities, including "bluesheets" that outlined confidential strategies for approaching new and existing customers. (Id. at 74-78.) Foley participated in bi-weekly conference calls hosted by Cueva and other Kroll employees who were based in Minnesota, and these calls focused on sales, training and Kroll's clients. (Cueva Aff. ¶3.) During these calls confidential information was discussed, including information regarding client contacts and the manner in which Kroll conducts its business. (Id.) Throughout Foley's employment with Kroll, he visited Minnesota eight separate times for training or to meet with Kroll clients. (Wood. Aff. Ex. A. at 54-63; 65-67; 83-92; 94-99.) During his employment with Kroll, Foley spent approximately 50% of his time traveling to meet existing and potential clients. (Cueva Aff. ¶4.) Foley traveled to many states, including Minnesota, Texas, Georgia, Pennsylvania, Delaware, the District of Colombia, and Maryland. (Id.)

On May 2, 2005, Foley resigned from Kroll to work for On-Site E-Discovery, Inc. ("On Site"), a competitor of Kroll. (Foley Aff. ¶7.) Foley began his employment at On Site on May 16, 2005, and he is currently based in Alexandria, Virginia. (Id. ¶8.) Foley is the Director of Electronic Evidence Consulting at On Site. (Wood Aff., Ex. A. at 101.)

Kroll filed suit against Foley alleging breach of contract, unfair competition, and requesting injunctive relief. (See Pl.'s Compl. at 5-7.) Foley filed the present motion, moving to dismiss the

3

case for lack of venue pursuant to 28 U.S.C. Section 1391(a) or, in the alternative, to transfer the case to the Eastern District of Virginia pursuant to 28 U.S.C. Section 1404(a). For the reasons that follow, the Court recommends that Foley's Motion to Dismiss be denied and that his Motion to Transfer be granted.

## II. CONCLUSIONS OF LAW

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(3) permits dismissal of a case on the basis of improper venue. When considering a motion to dismiss, the Court must construe the pleadings in the light most favorable to the nonmoving party and accept the facts alleged in the complaint as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir.1994); Ossman v. Diana Corp., 825 F.Supp. 870, 879-80 (D.Minn.1993). The Court must "resolve any ambiguities concerning the sufficiency of the plaintiffs' claims in favor of the plaintiffs . . . and give the plaintiffs 'the benefit of every reasonable inference' drawn from the 'well- pleaded' facts and allegations in their complaint." Ossman, 825 F.Supp. at 880 (citations and quotations omitted). As the Eighth Circuit stated in Frey v. City of Herculaneum, "[a] motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." 44 F.3d 667, 671 (8th Cir.1995) (quotations omitted).

### B. Minnesota Is Not the Proper Venue For the Present Action.

Kroll alleges that venue is proper in this case under 28 U.S.C. § 1391(a)(2), which states, in part:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought only in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated.

Foley argues that venue is improper in the present case because Minnesota is not the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Id. In support of his argument, Foley focuses on the Eighth Circuit's decision in Woodke v. Dahm, 70 F.3d 983 (8th Cir.1995).

The plaintiff in Woodke was a resident of the Northern District of Iowa where he designed and sold semi-trailers under the federally registered trademark "Hawkeye Eagle." Id. at 984. The plaintiff sued defendants alleging that defendants published an advertisement in a paper featuring a photograph of a Hawkeye Eagle brand trailer with plaintiff's trademark obscured. Id. at 985. The newspaper was not distributed in Iowa. Id. Plaintiff's complaint alleged "what is called 'reverse passing off,' which is 'the defendant's unauthorized removal of plaintiff's product's identifying marks before reselling the goods.'" Id. (quoting Pioneer Hi-Bred Int'l v. Holden Foundation Seeds, Inc., 35 F.3d 1226, 1241 (8th Cir.1994)).

The Woodke Court began its analysis by noting that the general venue statute was applicable because plaintiff had alleged a claim under the Lanham Act, which does not have a special venue provision. Id. at 985. As the claim was based on a federal statute, the Court looked to 28 U.S.C. §1391(b)(2) as the general venue statute that governed the case. Id. The Woodke Court noted that the venue statute "does not posit a single appropriate district for venue; venue may be proper in any of a number of districts, provided only that a substantial part of the events giving rise to the claim occurred there." Id. (citing Setco Ents. Corp. v. Robbins, 19 F.3d 1278, 1281 (8th Cir.1994)).

The Woodke Court noted that "[t]he place where the alleged passing off occurred . . . provides an obviously correct venue." Id. However, as there was "no evidence of any advertising or sales of the infringing advertisement in the Northern District of Iowa," Plaintiff contended that

the district of his residency was the proper venue because that is where the ultimate effect of the passing off. would occur. Id. The Court responded to plaintiff's argument by stating that:

> we believe that accepting [plaintiff's] argument would work a transformation of the venue statute that Congress could not have intended . . . We think it far more likely that by referring to 'events or omissions giving rise to the claim,' Congress meant to require courts to focus on the relevant activities of the defendant, not the plaintiff.

Id. The Court explained its reasoning, "[f]or one thing, it is not easy to know how a plaintiff's 'omissions' could ever be relevant to whether a claim has arisen. For another . . . if Congress wanted to lay venue where the plaintiff was residing when he was injured, it could have said so expressly." Id. The court concluded that venue did not exist in the Northern District of Iowa simply because that was where plaintiff was residing when the unauthorized removal of his trademark occurred. Id. The Court took its analysis in Woodke a step further. The Court noted that plaintiff failed,

> to adduce any other evidence that a substantial part of the events giving rise to his Lanham Act claim occurred in the forum that he chose. He does not claim that the trademarks were altered in the Northern District of Iowa. He asserts that [defendants] manufactured all of the trailers involved in the Lanham Act claim in the forum, and that the . . . dealership agreement was executed in Iowa. These activities, however, have an insubstantial connection with the kinds of events that give rise to a claim. It is true that manufacturing the trailers was a necessary event, in a causal sense, to an attempt to pass them off, but we do not think that it is an event giving rise to [plaintiff's] claim because it was not itself wrongful.

Id. at 985-86.

Foley argues that Woodke stands for the proposition that venue is only proper in a jurisdiction where the defendant engaged in the wrongful act or omission giving rise to the claim. Kroll argues that Woodke does not control in the present situation, because Woodke's focus on the wrongful conduct of the defendant only applies to claims asserted under federal question jurisdiction, not claims asserted under diversity jurisdiction pursuant to 28 U.S.C. §1332.

6

This Court rejects Kroll's argument. The language used in 28 U.S.C. §§1391(a)(2) and (b)(2) is substantially similar. In fact the only difference between these two statutes is that §1391(a)(2) applies to "a civil action wherein jurisdiction is founded only on diversity of citizenship" whereas §1391(b)(2) applies to "a civil action wherein jurisdiction is not founded solely on diversity of citizenship." Therefore, Kroll's argument that the holding in Woodke is limited to cases arising under §1391(b)(2) is rejected.

In the present case, the alleged events that give rise to Kroll's claims are set in Virginia. Although Foley was an employee of a Minnesota company, although the non-compete agreement was drafted in Minnesota, and although Foley was given training and supervision in Minnesota, none of these events are events that give rise to the claim in the present case. The actions that give rise to the claim in this case, are those actions taken by Foley in Virginia. Foley is currently employed by On-Site, Kroll's competitor, in Virginia. If Foley has engaged in any actions that constitute a breach of his non-compete agreement, those actions will have occurred in Virginia.

For example, in Kroll's Complaint, Kroll alleges that Foley "has, or will, disclose to On-Site Kroll Ontrack's Confidential Information." (Pl.'s Compl. at 5.) However, if Foley has disclosed to On-Site Kroll's confidential information, any such disclosure would have occurred in Virginia, where Foley works for On-Site, and not in Minnesota. Furthermore, in Count Two of Kroll's Complaint Kroll alleges that "Foley's conduct and actions . . . constitute a breach of his Agreement regarding the misappropriation, use and/or disclosure of Confidential Information. (Pl.'s Compl. at 6.) In Count Three of Kroll's Complaint, Kroll alleges that "Foley's conduct and actions . . . constitute unfair competition in violation of the common law of the State of Minnesota." (Pl.'s Compl. at 6). If all of Kroll's allegations are taken as true, as they must in a motion to dismiss, any

conduct that Foley engaged in to breach his Agreement, or any conduct that constituted unfair competition, occurred outside of the State of Minnesota, in the State of Virginia.

Kroll points to numerous contacts that it believes are sufficient to establish venue in Minnesota, including: Kroll is a Minnesota corporation; Foley interviewed for his position in Minnesota; the non-compete agreement was drafted and finalized in Minnesota; Foley reported directly to a Kroll supervisor who was based in Minnesota for the majority of his employment, with whom he had regular contacts; the non-compete agreement requires the application of Minnesota law; Foley received substantial job training in Minnesota; Foley met with Kroll customers in Minnesota on several occasions; and through training and customer visits to Minnesota, Foley obtained the client contacts and confidential information that is now part of Kroll's lawsuit against him.  (See Pl.'s Mem. in Opp. at 2-3.)  However, not one of these contacts constitutes a substantial part of the events or omissions giving rise to Kroll's claims in the present case.  If Foley breached his non-compete agreement by disclosing or otherwise misusing confidential information he gained at Kroll, that breach of contract occurred in Virginia, not in Minnesota.

While the venue statute "does not posit a single appropriate district for venue," see Woodke, 70 F.3d at 985, Minnesota is not the proper venue for the present action.  If venue is improper, a court has broad discretion to determine whether the case should be dismissed or whether the case should be transferred.  See Caldwell v. Palmetto State Savs. Bank of S.C., 811 F.2d 916, 919 (5th Cir.1987).

### C. The Present Case Should Be Transferred to the Eastern District of Virginia Pursuant to 28 U.S.C § 1404(a).

In the alternative to his motion to dismiss for improper venue, Foley moved to transfer this action to the Eastern District of Virginia pursuant to 28 U.S.C. §1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). The burden is on the moving party to show why a transfer of the case is appropriate. See Terra Int'l v. Mississippi Chemical Corp., 922 F.Supp. 1334, 1362 (N.D.Iowa.1996). The Eighth Circuit stated that "[i]n general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." Terra Int'l v. Mississippi Chemical Corp., 119 F.3d 688, 695 (8th Cir.1997), cert. denied, 522 U.S. 1029 (1997). Here, however, the Court has concluded that Plaintiff's choice of venue was improper. While Virginia may not be the only proper venue, the Court concludes that transfer to the Eastern District of Virginia is warranted.

Moreover, the Court concludes that transfer to Virginia would be proper even if it has not already concluded that Minnesota is not a proper venue.

"Change of venue, although within the discretion of the district court, should not be freely granted." In re Nine Mile Ltd., 692 F.2d 56, 61 (8th Cir.1982). The party seeking to transfer the case "bears the heavy burden of showing that the balance of factors *strongly* favors the movant." United Mortgage Corp. v. Plaza Mortgage Corp., 853 F.Supp. 311, 315 (D.Minn.1994). In order to determine whether to transfer a case, the Court must consider a number of factors, including "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." Terra Int'l v. Mississippi Chemical Corp., 119 F.3d at 691. The Court is not limited to a

consideration of only these three factors; "[i]nstead, courts have recognized that such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Id.

### 1. The Convenience of the Parties and the Witnesses Weighs Strongly In Favor of Transfer.

As noted above, the Eighth Circuit has acknowledged that determinations regarding motions to transfer under §1404(a) require a consideration of the particular facts of the case requesting transfer. Id. In addition, the Eighth Circuit has stated that

> [u]nder the general category titled 'Balance of Convenience' [factors to be considered include] (1) the convenience of the parties, (2) the convenience of witnesses--including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law.

Id. at 696 (citing Terra Int'l v. Mississippi Chemical Corp., 922 F.Supp at 1357-61.) The Terra Court noted that "[t]hese considerations parallel the factors that courts typically analyze under section 1404(a)." Id. The Court will look at each of these factors in turn in light of the particular facts of the present case.

### a. The Convenience of the Parties.

The first factor to consider within the general category of "balance of convenience" is the convenience of the parties. Normally there is a presumption in favor of the plaintiff's choice of forum that the defendant must overcome in order for the motion to transfer to be granted. See Christensen Hatch Farms, Inc. v. Peavey Co., 505 F.Supp. 903, 911 (D.Minn.1981). This presumption "is particularly true where the plaintiff resides in the district in which the lawsuit was filed." Graff v. Qwest Communications Corp., 33 F.Supp.2d 1117, 1121 (D.Minn.1999). Here,

however, the Court has concluded that Plaintiff chose an improper venue. Even were that not the case, the Court concludes that the convenience of the parties weighs strongly in favor of transfer.

Kroll argues that transfer of venue in this case would merely shift the inconvenience from Foley onto Kroll. However, that is not the case. Kroll is a multi-national corporation, with offices in Minnesota and Virginia, among other places. Kroll has a physical presence in Virginia and regularly conducts business in Virginia. In addition, Kroll could have added a forum selection clause to its non-compete agreements with its out of state employees, but it chose not to. The fact that Kroll did not include a forum selection clause in this agreement is further evidence that Kroll would not be inconvenienced by litigating with out of state employees in their home states. Therefore, Kroll can adequately protect its interests in this case if the case is transferred to the Eastern District of Virginia.

On the other hand, Foley is an individual with no presence in the State of Minnesota. Foley has parental responsibilities, in addition to his work responsibilities as an employee of On-Site. Foley would be greatly inconvenienced in his employment and parental responsibilities if he were forced to attend a lengthy trial in Minnesota. Therefore, the convenience of the parties strongly weighs in favor of transfer.

### b. The Convenience of the Witnesses.

The second factor to consider under the "balance of convenience" category is the convenience of the witnesses. This factor "is an important factor for the Court and the parties since it determines the 'relative ease of access to sources of proof.'" Nelson v. Master Lease Corp., 759 F.Supp. 1397, 1402 (D.Minn.1991) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1964)). When considering this factor, "the relevant considerations . . . include the number of essential nonparty

witnesses, their location and the preference of courts for live testimony as opposed to depositions." Id. (citing Coast-to-Coast Stores, Inc. v. Womack-Bowers, Inc., 594 F.Supp. 731, 734 (D.Minn.1984). The Nelson Court stated that the convenience of the witnesses factor should not be determined solely based on which party has "a longer list of possible witnesses located in the respective districts; [instead] the party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." Id. The Court must "examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum. . . . The burden is on the defendant to provide these facts by way of affidavit or other information." Reid-Whalen v. Hansen, 933 F.2d 1390, 1396 (8th Cir.1991) (citations omitted).

In the present case, Foley has specified the essential witnesses to be called and has made a general statement of what their testimony will cover. (See Def.'s Mem. at 12-13.) Foley anticipates calling Mr. Chris Wall as a witness. Foley worked closely with Chris Wall, a Legal Consultant for Kroll who was based in Virginia with Foley during his employment. Foley argues that Mr. Wall's testimony "will be crucial to establishing whether Mr. Foley possesses Kroll customer goodwill which needs to be protected through enforcement of the noncompetition agreement." (Def.'s Mem. at 12.) Mr. Wall shared key accounts with Foley and his testimony is necessary to "demonstrate that Mr. Foley did not enjoy a special hold on any of the customers." (Def.'s Reply Mem. at 14, n. 6)

In addition, Foley states that many of his largest customers are located in the area surrounding Washington, D.C. and on the East Coast. Foley states that these witnesses will be crucial witnesses to his defense, as they will be necessary to "establish whether Mr. Foley possessed

Kroll's customer goodwill and the extent and nature of Mr. Foley's contacts with these customers, if any, on behalf of On Site." (Def.'s Mem. at 13). Foley further states that his previous customers from Washington, D.C. and the East Coast are crucial witnesses because, if any of these customers makes the decision to transfer their business from Kroll to On Site within the two year time frame of Foley's non-compete agreement with Kroll, "it will be necessary for them to testify why they made such a decision; what . . . Mr. Foley's role [was], if any; whether Kroll had the capability of handling the project; whether there were problems with Kroll . . . that led to the decision; . . . and . . . the dollar volume of such projects." (Def.'s Mem. at 13.) These third-party witnesses are key witnesses to the case as they will be needed to demonstrate the presence of lack of goodwill and to demonstrate damages, if applicable. Finally, Foley notes that his supervisors at On Site are based in Virginia, and their testimony is crucial to testify about Foley's job duties with On Site and his lack of disclosure and use of confidential information he received while an employee of Kroll. (Def.'s Mem. at 13). The parties will only have the ability to subpoena virtually all of the above described witnesses if this matter is transferred to the Eastern District of Virginia. The subpoena power of the District of Minnesota would not reach the majority of witnesses that Foley describes. See Fed. R. Civ. P. 45(c)(3)(A)(ii). These witnesses are necessary to Foley's defense of this case, and since there are numerous witnesses in Virginia and the surrounding states who cannot be subpoenaed by the District of Minnesota, their trial testimony would be via deposition. Since there are a great number of witnesses in Virginia and the surrounding area, and since the Court favors live trial testimony over deposition testimony, the convenience of the witness factor weighs strongly in favor of the Eastern District of Virginia.

### c. The Accessibility of Records and Documents

This factor does not add to the analysis in the current case, as it is a neutral factor that does not favor either party. Kroll will have records and documents in Minnesota, and Foley and third party witnesses are likely to have documents in Virginia and throughout the East Coast.

### d. The Location Where the Complained of Conduct Occurred

This factor weighs strongly in favor of transfer. As noted above, if Foley engaged in any violation of the Agreement, that violation occurred, or will occur, in Virginia. Foley works for a competitor of Kroll in Virginia, and if Foley disclosed any confidential information or in any way violated the non-compete agreement, that violation will have occurred in Virginia.

As the Agreement clearly states that Minnesota law will control any controversy that arises under the Agreement, the last factor, the applicability of each forum's state's substantive law, is not applicable to the present analysis. Therefore, the analysis of the general category of "balance of convenience" weighs strongly in favor of transfer.

### 2. The Interests of Justice Weigh Strongly In Favor of Transfer

After considering the balance of convenience factors, a court must then determine whether the interests of justice will be served by authorizing a transfer of venue. The Eighth Circuit has stated that

> [u]nder the general category titled 'Interest of Justice' the [factors to be considered include] (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine the questions of local law.

Terra Int'l, 119 F.3d at 696 (citing Terra Int'l, 922 F.Supp. at 1361-63.) The Eighth Circuit noted that "these considerations parallel the factors that courts typically analyze under section 1404(a)."

14

Id. However, in cases "where party and witness convenience weigh[s] strongly in favor of transfer, courts have repeatedly found that transfer under §1404(a) comports with the interest of justice." Nelson v. Soo Line R.R. Co., 58 F.Supp.2d 1023, 1027 (D.Minn.1999).

### a. Judicial Economy and the Advantages of Having a Local Court Determine Questions of Law

These two factors, judicial economy and the advantages of having a local court determine questions of law, are consolidated because both of these factors address related issues. Either court will be able to resolve this case with equal judicial economy, so the judicial economy factor does not add to this analysis. While the Agreement at issue in the present case provides that Minnesota law will govern any subsequent disputes, this Court is confident the Virginia Court will be able to interpret and apply Minnesota law.

### b. Plaintiff's Choice of Forum

Plaintiff's choice of forum is the District of Minnesota. The Court has concluded that Minnesota is an improper venue. But even if it hadn't, this is just one factor which is outweighed by other factors which favor transfer of this case to the Eastern District of Virginia.

### c. The Comparative Costs to the Parties of Litigating in Each Forum.

The travel costs to Kroll, if the case were transferred to the Eastern District of Virginia, would be insignificant as Kroll is a multi-national corporation with an office in Virginia. Foley is an individual who would bear significant costs if forced to attend a lengthy trial in Minnesota. Thus this factor weighs strongly in favor of transfer.

### d. The Parties' Ability To Enforce a Judgment

A plaintiff who obtains a monetary judgment from a federal district court may register that judgment in any other judicial district where the defendant's assets are located. See 28 U.S.C. §

1963. Therefore, this factor does not add to the analysis.

### e. The Remaining Interest of Justice Sub-Factors

The remaining interest of justice sub-factors- obstacles to a fair trial and conflict of law issues- do not factor into the analysis in light of the facts of this case.

After analyzing all of the relevant factors in the present case, the convenience of the witnesses and parties weigh strongly in favor of transfer. In cases "where party and witness convenience weigh strongly in favor of transfer, courts have repeatedly found that transfer under §1404(a) comports with the interest of justice." Nelson 58 F.Supp.2d at 1027. Pursuant to 28 U.S.C. § 1391(a)(1), this case could have been brought in the Eastern District of Virginia because it is the judicial district where Foley resides. Therefore, this Court recommends that the present case be transferred to the Eastern District of Virginia pursuant to 28 U.S.C. §1404(a).

### III.   RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss be denied and that Defendant's Motion to Transfer to the Eastern District of Virginia be granted.


DATED: January 25, 2006                    s/ *Franklin L. Noel*
                                           FRANKLIN L. NOEL
                                           United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 13, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636

to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **February 13, 2006,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.